**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ——————————————— ) | |
| **Thermal Engineering International** ) | |
| **(USA) Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **21-10937-NMG** |
| **Daryl L. Lanaville,** ) | |
| ) | |
| **Defendant.** ) | |
| ——————————————— ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Thermal Engineering International (USA) Inc. ("Thermal Engineering" or "plaintiff") brings this action against Daryl L. Lanaville ("Lanaville" or "defendant") seeking monetary damages and injunctive relief. Plaintiff alleges that defendant breached a non-solicitation covenant when he left Thermal Engineering to join a new company, HyPro, Inc. ("HyPro"), and shortly thereafter solicited other Thermal Engineering employees to follow him there. Defendant has filed a motion for summary judgment (Docket No. 53) which plaintiff opposes. For the reasons set forth below, the Court will allow, in part, and deny, in part, the motion for summary judgment.

- 1 -

I.  **Background**

A.  **The Separation and Non-Solicitation Agreements**

Thermal Engineering is a Delaware corporation that builds heat transfer technology for companies in the electric power generation industry.  HyPro is a machine shop that uses raw castings to manufacture parts according to customer specifications.  Until October, 2020, defendant worked at a Thermal Engineering manufacturing facility in Joplin, Missouri.  Shortly after he left its employ, defendant started working at HyPro as the manager of a plant in Vinita, Oklahoma.

Defendant signed a Separation Agreement and General Release ("the Separation Agreement") with Thermal Engineering when his employment there was terminated.  That agreement incorporated by reference an Employee Non-Disclosure, Non-Solicitation, Non-Competition and Assignment Agreement ("the Non-Solicitation Agreement") which Lanaville had previously agreed to when he was hired at Thermal Engineering.  The pertinent portion of the Non-Solicitation Agreement requires that Lanaville, during the course of his employment and for one year thereafter, will not

> (i) induce or attempt to induce any employee, consultant or advisor of the Company to end its relationship with the Company, or in any way interfere with the relationship between the Company, on the one hand, and the employee, company and advisor, on the other hand,

> (ii) knowingly hire any person who was an employee, consultant or advisor of the Company until twelve (12)

months after such individual's relationship with the
Company has been terminated . . . .

**B.  The Conduct at Issue**

In the spring of 2021, after his departure from Thermal
Engineering, Lanaville had conversations with two individuals
who were then still employed at Thermal Engineering.  Lanaville
and those individuals - Wrangler Bowman ("Bowman") and Jeremy
Graham ("Graham") - discussed their employment status and the
possibility of Bowman and Graham working at HyPro.  Following
those conversations, Lanaville informed his supervisor at HyPro
that Bowman and Graham might be interested in working there.  In
late May, Bowman, a plant superintendent, and Graham, a skilled
machine shop supervisor, left plaintiff's employ and went to
work for HyPro in Oklahoma.

Thermal Engineering filed this suit against Lanaville in
June, 2021.  Plaintiff seeks injunctive relief to prevent
defendant from violating the terms of the Separation Agreement
and Non-Solicitation Agreement (Count I) and damages for breach
of contract (Count II).  Defendant moves for summary judgment in
his favor as to both claims.  The Court will address the claim
for breach of contract first and then the request for injunctive
relief.

## II.   Motion for Summary Judgment

### A.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B.  Application**

**1.  Breach of Contract**

A claim of breach of contract under Massachusetts law requires a plaintiff to demonstrate that: 1) there was an agreement between the parties, 2) the agreement was supported by consideration, 3) the plaintiff was ready, willing, and able to perform his or her part of the contract, 4) the defendant committed a breach of the contract and 5) the plaintiff suffered harm as a result. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690, 46 N.E.3d 24, 39 (Mass. 2016).

Defendant moves for summary judgment on the grounds that the Non-Solicitation Agreement is unenforceable, there was no breach of the agreement and the alleged damages were not caused by his purported breach of contract.

**a.  Enforceability**

The enforceability of a restrictive covenant under Massachusetts law depends upon whether it is

> [1] necessary to protect a legitimate business
> interest, [2] reasonably limited in space and time,
> and [3] consonant with the public interest.

Oxford Glob. Res., LLC v. Hernandez, 480 Mass. 462, 470, 106
N.E.3d 556, 565 (Mass. 2018)(quoting Boulanger v. Dunkin' Donuts
Inc., 442 Mass. 635, 639, 815 N.E.2d 572, 577 (Mass. 2004)).

For the reasons that follow, the Court finds that the
challenged provisions of the Non-Solicitation Agreement are
enforceable.

### i.  Legitimate Business Interest

Lanaville asserts that the Non-Solicitation Agreement does
not protect a legitimate business interest such as the
protection of trade secrets, confidential information or good
will.  In support of his position, he refers to a Massachusetts
Superior Court holding that an employer

> does not have a legitimate interest in barring
> employees from using their training and experience on
> behalf of a competitor [and thus] it also has no
> legitimate interest in restraining former employees
> from soliciting current [] employees to leave and join
> a competitor.

Robert Half Int'l v. Simon, No. 2084-CV-00060, 2020 Mass. Super.
LEXIS 27, at *22 (Mass. Super. Ct. Jan. 28, 2020).

The Massachusetts Superior Court, in turn, cites to a
Wisconsin Supreme Court case which relied upon the
interpretation of a Wisconsin statute evincing "a strong public
policy against enforcement of trade restraints which are
determined to be unreasonable upon all employees." Manitowoc Co.
v. Lanning, 379 Wis. 2d 189, 204 n.18, 906 N.W.2d 130, 137 n.18

(Wis. 2018) (citation omitted).  Furthermore, the court in Robert Half found that the employer there had not paid employees "extra consideration for agreeing to the anti-raiding provision."  Robert Half, 2020 Mass. Super. LEXIS 27, at *22. In the case at bar, Thermal Engineering has submitted a sworn declaration that it provided Lanaville with severance payments and other benefits in consideration for his compliance with the Non-Solicitation Agreement and other aspects of the Separation Agreement.

Thermal Engineering also disputes that Lanaville's recitation of legitimate business interests fully defines the interests an employer is permitted to protect in the context of an employer-employee restrictive covenant.  Thermal Engineering cites a decision from within this district in which the court held that employers have an interest "in preserving the talent and goodwill of their employees". Seniorlink Inc. v. Landry, No. 19-CV-11248, 2021 WL 3932309, at *8 (D. Mass. Sept. 2, 2021) (quoting Advanced Micro Devices, Inc. v. Feldstein, No. 13-CV-40007, 2013 WL 10944934, at *11 (D. Mass. May 15, 2013)).  Such an interest includes "ensuring [current employees] are not influenced to leave by former employees." Id.

Although neither of the cases cited by the parties is binding authority upon this Court, Seniorlink is persuasive and analogous to the facts of the pending case.  In Seniorlink, the

relevant provisions of the agreement at issue were substantially similar to the disputed terms of the Non-Solicitation Agreement. See Seniorlink, 2021 WL 3932309, at *2 (quoting the operative portion of the disputed non-solicitation agreement).  Moreover, the defendant in Seniorlink received additional compensation as consideration for his compliance with the challenged terms, just as Lanaville did here.  Thus, the Court finds that the Non-Solicitation Agreement here protects a legitimate business interest.

### ii.  Scope

Defendant next contends that even if the Non-Solicitation Agreement protects a legitimate business interest, it is nevertheless too broad for him to understand or for this Court to enforce.  Lanaville's stated concern that the Non-Solicitation Agreement might apply to him if he were to inadvertently recruit a far-flung employee of a Thermal Engineering affiliate for an innocuous position at a non-competing company is irrelevant. See Boulanger, 815 N.E. 2d at 577 (explaining that the enforceability of a restrictive covenant depends on whether it is "reasonable in light of the facts in each case").  Lanaville is purported to have solicited two former colleagues with whom he worked closely to join him at a nearby company that drew from the same pool of employee talent.  The Non-Solicitation Agreement was intended to (and

did) protect Thermal Engineering's legitimate interest in
preserving the talent and goodwill of its employees.

In any event, the terms of the Non-Solicitation Agreement
do not create an unreasonable limitation on employee mobility in
general.  The agreement applies to former employees for only one
year after their departure from Thermal Engineering and extends
only to the solicitation of current employees or those who
worked for a protected entity within the past year.  Courts in
Massachusetts have routinely upheld non-solicitation agreements
of a similar or even greater length. See, e.g., Seniorlink, 2021
WL 3932309, at *8 (collecting cases); Aspect Software, Inc. v.
Barnett, 787 F. Supp. 2d 118, 128 (D. Mass. 2011) (noting that
"courts have upheld non-compete terms significantly longer than
one year").

Defendant insists that the number of corporate entities
covered by the Non-Solicitation Agreement makes the covenant far
too broad.  Plaintiff concedes that the Non-Solicitation
Agreement applies without geographic limitation to Thermal
Engineering and more than twenty other subsidiaries of Babcock
Power Inc.  It avers, however, that in practice the agreement
applied to fewer than 950 employees across eight domestic
entities and fewer than 80 employees at two foreign entities.
Moreover, those employees could have left Thermal Engineering to
join HyPro or any other company.  The challenged restrictive

covenant simply prohibited Lanaville and other former Thermal Engineering employees from inducing them to do so for a relatively short period of time.  Thus, the scope of the disputed terms of the Non-Solicitation Agreement does not render it unenforceable.

### iii.  Public Interest

Massachusetts case law recognizes that there is a benefit to the public from the enforcement of reasonable contracts. See, e.g, Iron Mountain Info. Mgmt., Inc. v. Viewpointe Archive Servs., LLC, 707 F. Supp. 2d 92, 112 (D. Mass. 2010). Restrictive covenants are "consonant with the public interest" if signed "freely and for compensation[,]" limited in duration and directed towards a legitimate business interest. Lombard Med. Techs., Inc. v. Johannessen, 729 F. Supp. 2d 432, 440 (D. Mass. 2010) (citation omitted).

Lanaville contends that there is a countervailing public interest in preserving the freedom of an employee to leave a job and bring her skills to a new employer.  Even so, the Non-Solicitation Agreement does little to impinge upon that freedom. As discussed above, the provision at issue here constrains the ability of a former employee of Thermal Engineering to induce a current or recent employee to end her employment and join a new company.  It does not, however, prevent either employee from

offering their skills and experience to a new company of their own choosing.

### b.  Breach

Defendant denies that his conduct was in contravention of the Non-Solicitation Agreement regardless of whether it is enforceable.  Although Lanaville claims that this conclusion is supported by the undisputed record, Thermal Engineering disputes material facts upon which he relies.

First, Lanaville asserts that Bowman and Graham reached out to him first with respect to potential employment opportunities at HyPro.  Thermal Engineering counters with deposition testimony that Lanaville made the initial connection with Bowman and told him about his new job at HyPro.  This connection, in turn, led Bowman to respond less than two weeks later to express his interest in finding a new job.  Furthermore, even if Bowman and Graham had initiated contact with Lanaville, that fact would not be dispositive. Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 239 (D. Mass.), aff'd, 731 F.3d 6 (1st Cir. 2013) (finding that a non-solicitation agreement can apply where the signatory takes "active steps" to solicit a third-party who reached out initially).

Lanaville also contends that Bowman and Graham had irrevocably decided to leave Thermal Engineering before speaking with him.  That contention is not beyond dispute either.

- 11 -

Thermal Engineering refers to, inter alia, deposition testimony
that Bowman had not submitted any applications for a new job
until he spoke with Lanaville and Graham had not done so in
months.  It is unclear if and when Bowman and Graham would have
left Thermal Engineering if not for their conversations with
Lanaville about employment opportunities at HyPro.  Viewing the
record in the light most favorable to plaintiff, as the Court
must do on defendant's motion for summary judgment, see
O'Connor, 994 F.2d at 907, it cannot be said that this issue is
firmly established in the favor of defendant.

Finally, Thermal Engineering points out a litany of
additional evidence demonstrating the extent to which Lanaville
was involved in recruiting, interviewing and hiring Bowman and
Graham.  A rational jury could find that those actions induced
Bowman and Graham to leave Thermal Engineering.  The Court
concludes, therefore, that there are ample and significant
disputes of material fact as to whether Lanaville breached the
terms of the Non-Solicitation Agreement.

### c.  Damages

Lanaville also claims that Thermal Engineering failed
plausibly to allege that it suffered any harm as a result of his
conduct.  A plaintiff may not bring a claim for breach of
contract if it has not suffered a harm caused by that breach.
See, e.g., Bulwer, 46 N.E.3d at 39.  Thermal Engineering

counters that it will be able to show that Lanaville's breach of the Non-Solicitation Agreement caused three categories of damages:

> 1) harms it suffered when it had to find replacements for Bowman and Graham and train those replacements;
>
> 2) liquidated damages under the Separation Agreement; and
>
> 3) third-party contract penalties incurred due to production issues caused by the loss of Bowman and Graham.

For the reasons that follow, the Court concludes that there is a genuine dispute of material fact with respect to the first two categories of damage but not as to the third.

### i.   Training and Replacement Damages

In the memorandum in support of his motion for summary judgment, Lanaville disputes that the departure of Bowman and Graham was the proximate cause of any monetary harm plaintiff suffered from having to replace the pair and train their replacements.  He contends that Bowman and Graham were planning to leave Thermal Engineering and that the company would have incurred replacement and training costs regardless of whether they were induced to do so by Lanaville.  As previously discussed, however, there is a genuine dispute of fact as to whether Bowman and Graham would have left Thermal Engineering but for the alleged solicitation by Lanaville that they come to work at HyPro.  Thus, Thermal Engineering's alleged damages in

connection with replacing Bowman and Graham and training their
replacements cannot be decided at summary judgment.

### ii.  Liquidated Damages

Lanaville also asserts that Thermal Engineering cannot
recover liquidated damages pursuant to the Separation Agreement
because a liquidated damages clause does not satisfy the harm
element of a breach of contract claim.  He is correct that the
liquidated damages sought here, which would comprise of
Lanaville forfeiting the severance package he received from
Thermal Engineering, are a remedy for a breach of contract and
not a harm caused by the alleged breach.  That proposition is
not, however, dispositive.

Because there is a genuine dispute of fact as to whether
plaintiff suffered a harm when it incurred replacement and
training costs, it may still be able to prove that defendant
breached the Non-Solicitation Agreement and caused it harm.  In
such event, Thermal Engineering may be entitled to recover
liquidated damages under the Separation Agreement.  Furthermore,
the amount of such damages is reasonable in view of the
anticipated loss and difficulty in ascertaining that loss which
Thermal Engineering faced when it entered into the Separation
Agreement. See NPS, LLC v. Minihane, 451 Mass. 417, 420, 886
N.E.2d 670, 673 (Mass. 2008).

### iii.  Contract Penalties

Finally, defendant contends that plaintiff cannot recover damages it purportedly suffered from contract penalties after Bowman and Graham departed Thermal Engineering for HyPro. Lanaville's core objection is that the newly developed theory relies on inadequate evidence and is unfairly prejudicial.  He expounds that Thermal Engineering did not disclose that it suffered contract penalties until after the close of fact discovery in its opposition to the motion for summary judgment.

Thermal Engineering refers to two parts of record evidence in support of its contract penalties theory.  The first is deposition testimony from Kenneth Murakoshi ("Murakoshi"), a Fed. R. Civ. P. 30(b)(6) corporate representative for Thermal Engineering designated to testify on the topic of damages. Murakoshi testified in June, 2022, that Thermal Engineering's contracts with power customers almost always include direct or liquidated damages provisions.  He also stated that the loss of key personnel affects plaintiff's ability to meet production deadlines and keep pace with customer orders.  From this testimony, plaintiff advocates for an inference that the loss of Bowman and Graham caused it to fall short of production requirements and suffer contractual damages.

The second relevant piece of evidence is a declaration from Craig Kedrowski ("Kedrowski") submitted with plaintiff's

opposition to the motion for summary judgment in August, 2022. Kedrowski states that the loss of Bowman and Graham caused Thermal Engineering to miss production deadlines and incur unspecified contract damages.  That conclusory evidence is insufficient to establish the damages plaintiff seeks or a causal connection between any such damages and defendant's alleged breach.  Thermal Engineering bears the ultimate burden of proof as to damages and cannot rely on "mere allegations or evidence that is less than significantly probative" at this stage of the proceedings. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citation omitted).

Even if Thermal Engineering had specific contracts showing that it faced liquidated damages and was able to connect such damages to the departure of Bowman and Graham, its failure to present any such evidence to date puts an end to the hypothetical.  Indeed, Lanaville avers that Thermal Engineering offered a series of terse responses and minimal productions with respect to damages throughout discovery.  Plaintiff cannot suddenly attempt now, or at trial, to introduce undisclosed evidence in an effort to substantiate its contract penalties theory. See Allscripts Healthcare, LLC v. DR/Decision Res., LLC, 521 F. Supp. 3d 112, 125-26 (D. Mass. 2021); Fed. R. Civ. P 37(c)(1).

### 2.  Injunctive Relief

Although plaintiff briefly purports to seek equitable relief that would compel defendant "to comply with his contractual obligations[,]" there is no dispute that the pertinent obligations expired long ago.  Thermal Engineering cites no authority in support of the notion that this Court could extend and enforce an expired restrictive covenant.  Thus, the claim for injunctive relief (Count I) will be dismissed.

### ORDER

For the foregoing reasons, the motion for summary judgment of defendant (Docket No. 53), as to the claim for injunctive relief (Count I), is **ALLOWED**, but, as to the claim for breach of contract (Count II), is **DENIED**.

**So ordered.**


                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated:  December 8, 2022